# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

DUSTIN LYNN MANTOOTH,          )
                                )
           Plaintiff,           )
                                )
vs.                             )   Case No. CIV-09-159-HE
                                )
CLEVELAND COUNTY, et al.,       )
                                )
           Defendants.          )

## ORDER

In this case, plaintiff asserts claims under 28 U.S.C. § 1983 for alleged violations of his Fourth Amendment rights arising out of his detention and arrest by Cleveland County sheriff's deputies and from excessive force allegedly employed by one of them. He alleges violation of the parallel provisions of the Oklahoma Constitution and also asserts claims for negligence and assault and battery under Oklahoma state law. Defendants are Cleveland County Deputy Sheriff Rick Abbott, one of the deputies involved in the underlying incident, and Cleveland County, Oklahoma.[1]

Defendants have moved for summary judgment as to all of plaintiff's claims. The motion is fully, if somewhat confusingly,[2] briefed.

---

[1] *Plaintiff has sued both the current sheriff of Cleveland County, in his official capacity, and the county through its Board of County Commissioners. Such claims are, in substance, claims against Cleveland County.*

[2] *The parties' briefs address the "undisputed facts" in a fashion that greatly complicates any effort to identify what, if anything, is really undisputed. Defendants*

1

FACTUAL BACKGROUND

The general circumstances out of which this case arose are undisputed. During the afternoon of June 1, 2008, Kim Willis called 911 to report a domestic disturbance between her and plaintiff as to their son.[3] Cleveland County sheriff's deputies responded, with defendant Rick Abbott arriving first at the home, located at 9600 E. 29A Street, west of Noble, Oklahoma. Two other deputies, Stacy Sites and Kody Abbott, arrived soon thereafter.[4] Willis and plaintiff were sitting in a pickup at their residence when the officers arrived. Willis got out of the pickup and confirmed that she had made the 911 call, but indicated the situation was resolved. Defendant Abbott moved Ms. Willis aside and moved toward plaintiff in the pickup. Roughly at this point, the parties' versions of events begin to differ markedly.

Defendants' evidence supports the following version of events. Abbott, concerned with plaintiff possibly having a weapon, ordered plaintiff to show his hands and get out of the pickup. Plaintiff refused to show his hands, was very slow in eventually getting out of the

---

*identify their undisputed facts in paragraphs which include multiple factual assertions of potential significance (sometimes described in the third person and sometimes as if deputy Abbott is telling the story). Plaintiff then responds that it disputes those facts "in part," largely leaving it to the court to figure out, from citations to multiple portions of the record, which part is actually disputed. Similarly, both parties employ the technique of identifying cases they rely on and describing the facts of those cases, but largely leave it to the court to apply the cases to the issues in this case.*

[3]*The submissions of the parties variously refer to Ms. Willis as plaintiff's wife, common-law wife, fiancé, or girlfriend.*

[4]*Deputy Kody Abbott is the son of defendant Rick Abbott. Plaintiff asserts claims only against Rick Abbott. Unless otherwise indicated, references to "Abbott" mean Rick Abbott.*

2

pickup, acted aggressive in manner as he stepped away from the pickup and toward the officers, and was abusive and profane in his language. Plaintiff was ordered to "get on the ground," which, after repeated commands, he eventually did. The two additional deputies arrived at approximately this time. By this time, at least Abbott (and perhaps all the deputies) had their guns drawn. Deputy Sites began attempting to handcuff plaintiff, who was resisting by rearing up and rolling over. Defendant Abbott put his knee between plaintiff's shoulder and back area to prevent him from rolling over while Sites handcuffed him. The deputies then began moving plaintiff toward one of the officer's cars. He began resisting physically and was abusing Abbott verbally. Plaintiff attempted to head-butt defendant, at which point Abbott took him to the ground again. By that point, plaintiff had suffered injuries, including a bleeding scrape on his head. Plaintiff then started shaking his head and told deputy Sites that he had a sexually transmitted disease and hoped she got his blood on her.

Plaintiff's evidence, principally his own testimony and that of family members who were present, paints a different picture. That evidence, viewed most favorably to plaintiff, indicates he promptly showed his hands (while sitting in the pickup) upon the deputy's command, that he promptly got out of the pickup, and did not unduly resist. Plaintiff admits a profane challenge to the deputy being on his property, but states his language was equal to or better than that used by the deputy. Plaintiff got on the ground as ordered and was not physically resisting the effort to handcuff him. He told the deputies he would not resist, as his five-year-old son was watching the events. Nonetheless, deputy Abbott unnecessarily put his boot on the back of plaintiff's head, driving his head down into the gravel. At

3

approximately the same time, Abbott threatened Willis with arrest if she did not "shut up." Following the handcuffing, the deputies then got plaintiff up and walked him toward one of the officers' cars. Plaintiff acknowledges that, on the way, he said to Abbott "did it make you feel like a man to do that in front of my family?" but denied head-butting or otherwise physically resisting. According to plaintiff's evidence, Abbott responded by deliberately tripping plaintiff and knocking him to the ground face-first, knowing that plaintiff could not protect himself from the fall due to the handcuffs. Plaintiff acknowledges he was bleeding, but denies trying to get the blood on Sites or making any statements about disease.

It is undisputed that plaintiff was eventually arrested for obstructing an officer and for throwing human waste on an officer and threatening harm to an officer. The charges were later dismissed. Defendant Abbott was suspended by the then-sheriff of Cleveland County after plaintiff complained about Abbott's conduct. After an internal review, Abbott was terminated as a deputy based on the department's review of this incident. Following the election of a new sheriff some months later, Abbott was reinstated as a deputy.

There are many other alleged facts which the parties have sought to advance in their briefs, some of which have arguable relevance and others the relevance of which is less than obvious. However, the above description identifies those most obviously related to the disposition of the present motion.

## DISCUSSION

Summary judgment should be granted where — in light of the pleadings, discovery materials, and any affidavits — there is no "genuine issue" as to any "material fact" and the

4

movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c)(2). The court must review the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party. In re Wal-Mart Stores, Inc., 395 F.3d 1177, 1189 (10th Cir. 2005). The court may not make determinations of credibility nor weigh evidence, and must disregard all evidence favorable to the movant that the trier of fact would not be required to believe. Gossett v. Oklahoma, 245 F.3d 1172, 1175 (10th Cir. 2001). Mere conclusory allegations, without evidentiary support, do not create a genuine issue of fact. L&M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir. 2000).

Summary judgment "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Where the nonmoving party bears the burden of proof at trial, as the plaintiff does in this case, he cannot rely on his pleadings to defeat summary judgment; instead, he must put forth evidence sufficient to create a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Nevertheless, the moving party must demonstrate its entitlement to judgment as a matter of law.

## Constitutional Claims

Applying these standards to plaintiff's constitutional claims against deputy Rick Abbott, the court concludes the motion for summary judgment must be denied.[5] A police

---

[5]*Defendants have moved for summary judgment as to all of plaintiffs claims, presumably including his claims based on alleged violations of the Oklahoma Constitution. As neither party has suggested a different applicable standard under the Oklahoma Constitution, the court assumes the same standards apply to both sets*

5

officer violates a person's Fourth Amendment right to be free from unreasonable seizures if the officer makes a warrantless arrest without probable cause or an investigatory stop without a reasonable suspicion that the individual was engaged in criminal activity. Novitsky v. City of Aurora, 491 F.3d 1244, 1253 (10th Cir. 2007). An officer violates a person's Fourth Amendment right to be free from excessive force during a seizure if the officer's conduct was not "objectively reasonable in light of the facts and circumstances . . . from the perspective of a reasonable officer on the scene." Olsen v. Layton Hills Mall, 312 F.3d 1304, 1313-14 (10th Cir. 2002) (internal quotation marks and citations omitted).

The above description of the differing evidence offered by the parties makes it apparent there are multiple material factual disputes, including the question of how deputy Abbott approached plaintiff, how plaintiff reacted to that approach (whether he responded appropriately to the officer's instructions, etc.), what level of force was used, and the extent to which plaintiff's conduct provoked or justified the force used by Abbott or others. This precludes summary judgment on the issues of whether defendant's seizure of plaintiff or the force used to do it was reasonable. Viewing the evidence in the light most favorable to plaintiff, justiciable questions exist as to whether Abbott's conduct constituted a violation of plaintiff's Fourth Amendment rights, hence summary judgment for Abbott is unwarranted.[6]

---

*of constitutional claims.*

[6] Defendant Abbott raised the defense of qualified immunity. "When a § 1983 defendant raises the defense of qualified immunity on summary judgment, the burden shifts to the plaintiff to show that 1) the official violated a constitutional or statutory right; and 2) the constitutional or statutory right was clearly established when the

6

The parties' treatment of the constitutional claims against Cleveland County is less detailed than their discussion of the claims against Abbott. However, they acknowledge that a county's liability under §1983 cannot be based on the doctrine of *respondeat superior*, so the fact that claims remain against deputy Abbott does not mean that claims necessarily remain against the county. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). Rather, a municipality is only liable when its official "policy" or "custom" is the "'moving force' behind the injury" alleged. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 405 (1997). Here, plaintiff's complaint alleges in conclusory fashion that the county's "policy, custom or practice was the 'moving force' behind Plaintiff's constitutional injury" (Pl.'s Compl. ¶ 32), but makes no effort to allege any particular policy, custom or practice or to otherwise identify the basis for county liability. Defendants did not challenge the sufficiency of the pleading, but have apparently assumed that the alleged deficiency is the county's failure to train Abbott appropriately. They have proffered evidence stating that Abbott has received basic training through CLEET and had not previously been disciplined

---

alleged violation occurred." Olsen, 312 F.3d at 1312. In Olsen, the Tenth Circuit recognized that a qualified immunity defense is "of less value" when raised against an excessive force claim because to determine whether a constitutional violation has occurred, in that context, the court must look to whether the officer's conduct was "objectively reasonable." Id. at 1314 (internal quotation marks and citation omitted). Because an inquiry into reasonableness is "heavily fact dependant," summary judgment against an excessive force claim based on qualified immunity will not be granted "if the moving party has not quieted all disputed issues of material fact." Id. The defendant here has not quieted all such factual issues and, therefore, summary judgment based on qualified immunity is inappropriate.

for anything defendants view as serious. Plaintiff has responded in a fashion suggesting defendants guessed correctly as to plaintiff's intended basis for county liability — the county's alleged failure to train Abbott — but contends that factual disputes exist material to that determination. Plaintiff offers the deposition testimony of Don Holyfield, who was the Cleveland County Sheriff at the time of the incident and who directed Abbott's termination. Holyfield testified that certain basic training for deputies was inadequate, that the department's training budget was inadequate, and that he made a request for supplemental training funds which was denied by the county budget board. Although Holyfield did not testify that the training deficiency caused or contributed to deputy Abbott's conduct on the day in question, he said that it might have.

Defendants object to any consideration of Holyfield's testimony, on the basis it is hearsay and unreliable and on the basis he is offering expert opinions but was not designated as an expert or listed as an expert witness on plaintiff's exhibit list. While some of Holyfield's testimony may be hearsay, not <u>all</u> of it is and it is far from clear what portions defendants think <u>is</u> hearsay. Holyfield's testimony that an investigation of Abbott was conducted, that a decision to terminate Abbott was made by him and others, that he had requested training funds from the county, and that the funding request was denied are all facts within his personal knowledge and the court can discern no obvious reason why such testimony would be hearsay. The closer question is whether Holyfield can properly testify that the training provided to Abbott was inadequate, that the county's training budget was

8

deficient, or that the lack of training contributed to Abbott's conduct on June 1, 2008.[7] Such testimony is in the nature of opinion testimony and, while it seems clear enough that Holyfield is qualified to offer such opinions,[8] he has not been designated by plaintiffs to offer expert testimony.[9] The indicated opinion testimony as to the sufficiency of Abbott's training is outside the scope of the subject matter identified for his testimony;[10] there is no indication Holyfield's determination to terminate Abbott had anything to do with an assessment of the sufficiency of his training. In these circumstances,[11] the court concludes <u>opinion</u> testimony by Holyfield as to the adequacy of the county's training program or the adequacy of its training budget will not be permitted. However, that does not end the issue for present purposes. Defendant has not submitted any authority to the effect that expert testimony is <u>required</u> in order to establish that a particular training program is inadequate or that it

---

[7]Holyfield appears to have stopped short of even drawing the latter conclusion, indicating "I can't answer that" when asked if the lack of training contributed to Abbott's conduct. Holyfield Dep. 35:7, Oct. 30, 2009.

[8]Holyfield is a former Director of the Oklahoma CLEET (Council on Law Enforcement Education and Training) and a former chief of police of Norman, Oklahoma.

[9]Plaintiff has not filed any expert designation with respect to Holyfield. He is listed on the plaintiff's general witness list, but the description of his proposed testimony gives no hint that he will offer testimony as to the adequacy of the training of deputy Abbott.

[10]Pl.'s Witness List [Doc. # 16]

[11]The court notes that defendants have not designated any expert to address the adequacy of the county's training program, likely due to the absence of any expert designation by the plaintiff on that subject.

9

contributed to a particular action and the court is unaware of any such requirement. Even absent such testimony, the present submissions reflect that Abbott had received basic CLEET training and no further training beyond annual firearms qualification. It also reflects Holyfield's testimony (even after excluding impermissible expert testimony) that the office's training budget was "minuscule,"[12] that he requested training funds from the county, and that the request was denied. While the question is close, the court concludes this evidence is sufficient to create a justiciable controversy as to whether the training received by Abbott was inadequate and whether it contributed to the actions allegedly taken by him.[13]

The court concludes summary judgment should be denied as to plaintiff's constitutional claims against both defendants.

### State Statutory or Common Law Claims

Plaintiff asserts claims for negligence and assault and battery. Plaintiff argues that a jury might conclude from the above-described circumstances that Abbott was negligent in his treatment of plaintiff. The court can discern nothing in plaintiff's pleadings or in the evidentiary materials submitted with his response that would support a finding of negligence on the part of Abbott. Every action he allegedly took was intentional. Plaintiff may or may

---

[12]Terms such as "minuscule" may involve some characteristics of opinion testimony, but the court views it as essentially factual in these circumstances.

[13]Even excluding the opinions of Holyfield as to the adequacy of Abbott's training, the jury might still reach a conclusion in that regard based on permissible inferences from other facts.

not be able to prove what he has alleged, but, in the circumstances of this case, there is no apparent basis for a determination of negligence.[14] Summary judgment is appropriate for the defendants as to plaintiff's negligence claims.

Whether Abbott's contact with plaintiff involves the tort of assault and battery depends on whether Abbott's actions were justified under the circumstances. In attempting to effect the arrest of the plaintiff, Abbott was authorized to use reasonable force, free from liability for assault or battery, when met with forcible resistance. 22 Okla. Stat. § 193. As discussed above, a justiciable question remains as to whether Abbott's actions were reasonable under the circumstances. Further, a justiciable issue remains as to whether Abbott's actions were within the scope of his employment with the county. The Oklahoma Governmental Tort Claims Act ("GTCA") provides immunity to a public employee for conduct occurring in the scope of employment. 51 Okla. Stat. § 152.1(A). Subject to certain exceptions and limits, the state or political subdivision is liable for its employee's torts committed while acting within the scope of their employment. 51 Okla. Stat. § 153(A). In these circumstances, it is premature to conclude on summary judgment that either the county or Abbott will be insulated from liability based on the GTCA. Summary judgment will be denied as to the assault and

---

[14]To the extent plaintiff suggests a negligence claim against the county for its retention of Abbott as an employee (which defendant seems to have assumed or perhaps anticipated), there is similarly no basis shown for that. There is no evidence suggesting the county was on notice of any problem with Abbott at the time of the 2008 incident and his subsequent re-hiring by the county cannot have contributed in any way to the injuries plaintiff allegedly suffered in 2008.

battery claim.

## Issues as to Dual Representation

The court has some concern, given both the impact of the scope of employment issue on the remaining state claims and the nature of Mr. Holyfield's testimony,[15] that the interests of the county and Mr. Abbott are not parallel here and that representation of both defendants by the same counsel may be inappropriate. *See generally* Johnson v. Bd. of Comm'rs. for County of Fremont, 85 F.3d 489 (10th Cir. 1996); Galindo v. Town of Silver City, 127 Fed.Appx. 459 (10th Cir. 2005) (unpublished). The parties are directed to submit simultaneous briefs, on or before January 10, 2010, stating their positions with respect to the dual representation issue.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [Doc.#34] is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to plaintiff's negligence claims. The motion is otherwise denied. The parties are directed to submit supplemental briefs as indicated.

---

[15]It appears arguable that Sheriff Holyfield's action in terminating Abbott could be a basis for defense against liability by the county. Defendants' present posture is directed to showing Sheriff Holyfield's decision to have been wrong, which may be consistent with Abbott's individual interest, but is not necessarily so as to the county.

**IT IS SO ORDERED**.

Dated this 30th day of December, 2009.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE